UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------
```
PHILIP WEINTRAUB and
JAMILA WEINTRAUB,

        Plaintiffs,

   -v-

GREAT NORTHERN INSURANCE
COMPANY,

       Defendant.
```
------------------------------
```

21-cv-7965 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

    This lawsuit seeks insurance coverage for an apparent theft from a large, private collection of antiquities owned by Plaintiffs Philip and Jamila Weintraub. Following an extended investigation into the merits of the claim, the Defendant, Great Northern Insurance Company ("Great Northern"), denied the Plaintiffs' claim, asserting <u>inter alia</u> that the Weintraubs had unreasonably delayed in filing a notice of loss after discovering that their hoard was in disarray. After it removed this suit from state court, Great Northern filed the instant motion to dismiss, arguing that the Weintraubs' claim was correctly denied because their late notice of loss violated a purportedly necessary condition precedent to coverage.

    The Court concludes that under New York case law the Weintraubs' notice was tardy and might support dismissal as a matter of law. But the Court nonetheless denies Great Northern's motion for two, independent reasons.

First, the Complaint alleges that the version of the policy that Great Northern delivered the Weintraubs upon their most recent renewal did not include the notice of loss provision upon which the motion to dismiss relies. Nor was the notice of loss provision allegedly included in the version posted on the insurer's online client portal or otherwise made accessible to the Weintraubs. Accordingly, the parties dispute both the relevance and the authenticity of the supposedly "full" policy submitted by Great Northern in support of its motion. Therefore, under Second Circuit precedent, it would be inappropriate to rely on the notice of loss provision, contained only in that "full" policy, to dismiss the Complaint.

Second, the Court holds that the Complaint alleges facts that give rise to the plausible inference that Great Northern abandoned its late notice defense and so is precluded from using it to obtain dismissal. The parties agree that shortly after the Weintraubs tendered their claim, Great Northern issued a letter expressly reserving its right to later deny coverage for late notice of loss. Normally, such a reservation would preserve the procedural defense Great Northern now asserts. But in this case, Great Northern allegedly embarked on a twenty-month investigation of the claim's merits, allegedly propounding numerous costly, burdensome, and embarrassing demands on the Weintraubs for information, while assuring the Weintraubs that their claim would be adjudicated on its merits. The Complaint therefore gives rise to the plausible inference that Great Northern's extended delay and intensive claim investigation amounted to an implied waiver

of its late-notice defense. Viewing this record in the light most favorable to the Complaint, the Court accordingly holds that Great Northern is precluded from obtaining dismissal on the pleadings for the Weintraubs' failure to timely file a notice of loss.

Still, dismissal would later be appropriate if Great Northern were able to prevail in demonstrating both that it made the "full" policy adequately available to the Weintraubs and that it did not impliedly waive its late-notice defense. The Court accordingly proposes to proceed with the procedure previewed at oral argument, provided the parties consent: a limited-scope evidentiary hearing to resolve these two factual disputes. Otherwise, this case will move forward in the usual course, on the schedule set by the previously ordered case management plan.

## I.   **Background**

### A. **The Lost Antiquities**

Plaintiffs Philip and Jamila Weintraub are collectors of antiquities and fine arts who own a collection of more than one thousand items. ECF 1-1 ("Compl.") ¶ 1. This collection was displayed and stored in several places: their New York City apartment, their country home in Wassaic, NY, and Philip's Park Avenue cardiology office. Id. ¶ 10.

They have insured their collection since at least 1990 with Defendant Great Northern Insurance Company (a subsidiary of the Chubb

insurance company),[1] renewing the policy annually on August 18 and
adding new items as they were acquired through amendment of an
"Itemized Articles" rider, which listed more than 800 items with an
insured value of more than $7 million at the time of the loss at issue
in this case. Id. ¶¶ 1, 5, 7. The Weintraubs timely and fully made
their premium payments. Id. ¶ 9. As relevant here, the "Chubb Delux
House Coverage – Masterpiece" insurance policy, number 11585221-05,
was renewed on August 18, 2019 and is governed by New York law. Id.
¶¶ 7, 44, 51. However, the version of the policy delivered to the
Weintraubs in connection with the August 18, 2019 renewal, including
the version available electronically through Chubb's website, was
incomplete and did not include the provisions requiring a prompt notice
of claim. Id.

On or about August 25, 2019, Philip entered a storage room in the
Weintraub's country house and "discovered the storage bins had been
disturbed and the room was in disarray." Id. ¶ 10. After spending
several days reviewing the collection, Philip determined that 10 items
appeared to be missing, and he made a report to the local police
department on August 30, 2019. ¶ 11. By several weeks later, after
further review of the collection and records, he determined that 16
items were missing. ¶ 12. The local police determined in November 2019

---

[1] The parties sometimes use "Great Northern" and "Chubb"
interchangeably, since it appears that Great Northern issued the
policy, but it was underwritten and serviced by Chubb. For purposes
of the instant motion, it makes no difference.

that the investigation had hit a dead end and there was little chance of recovering the lost items. Id.

### B. The Insurance Claim

On November 23, 2019, the Weintraubs tendered a claim for $425,162 to Great Northern for sixteen lost items. Id. ¶ 13. This was 91 days after the alleged loss. Chubb acknowledged the claim in a letter dated November 25, 2019, in which it "made a reservation of rights concerning the allegedly late notice of claim." Id. ¶ 43.

Philip continued comparing the Weintraubs' records and collection and updated the itemized list of lost items on January 21, 2020, February 7, 2020, June 26, 2020, and July 13, 2020. Id. ¶ 14. Chubb completed its own inventory on January 5, 2021 and made a further amendment, bringing the total claim to $1,499,808.

The Complaint describes numerous allegedly "harassing, embarrassing and overbroad" requests made by the appointed claims counsel, Charles T. Rubin, Esq., as part of what would ultimately become a twenty-month investigation of the Weintraubs' claim that the Complaint describes as "aggressive, harassing, and overbroad." Id. ¶¶ 18-37. Rubin also allegedly propounded other document requests, insisted on inspections made inconvenient by the COVID-19 pandemic, and made "embarrassing" information requests to third parties, such as auction houses. Id. The Complaint further alleges that many of these demands were duplicative of documents Great Northern was allegedly required by the New York Insurance Law to maintain, but that had apparently been destroyed by the insurance broker. Id. ¶¶ 22-26.

The Weintraubs allege they nevertheless fully complied with all of Rubin's requests, but that it cost them time, money, and privacy. ¶ 37. And they allege that "Rubin also assured plaintiffs that Chubb was a good insurance company, and the claim would be resolved in good faith and on its merits." ¶ 20.

On July 16, 2021, Chubb issued a decision declining to cover the claim, relying inter alia on "lack of timely notice of claim" in November 2019. Id. ¶ 38. The other asserted grounds were "late submission of a pre-printed proof of loss form (in June 2020)" and a purported failure to establish that the loss occurred during the term of the policy. Id. ¶ 38.

### C. **Procedural History**

Plaintiffs seek (i) a declaration that, inter alia, Great Northern is obligated to provide coverage; (ii) damages of $1,499,808 plus interest; (iii) legal fees and costs incurred during the claims adjustment process; and (iv) punitive damages. This case was filed in New York County Supreme Court on August 24, 2021. Great Northern removed it to federal court on September 24, 2021. On October 1, 2021 Great Northern moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that coverage is precluded because the Weintraubs failed to provide a timely notice of loss as required by the policy, and that this is fatal to all of the Weintraubs' claims. See ECF 8-1.

As explained further below, the Weintraubs have sued for coverage under their insurance policy, but the parties dispute which version of the policy controls. In support of this motion, Defendant has filed

two declarations annexing two different versions of the policy documents.

First, in support of its motion to dismiss, Great Northern submitted a sworn affidavit from its counsel, Paul Ferland, Esq., stating that "attached hereto is a true and correct copy of the insurance policy issued by Great Norther Insurance Company to Phillip and Jamilla Weintraub, policy no. 11585221-05, for policy period August 18, 2019 to August 18, 2020, referenced in Plaintiffs' Complaint." Affidavit of Paul Ferland, ¶ 2, ECF 12. Attached is a 148-page insurance policy with a listed effective date of 8/18/19 but with a timestamp in the footer reading "INSURED 09/13/21 23.57.31." ECF 12-1 at 2 ("Long Policy"). The letter to the insured at the start of the policy does not include a date indicating when it was written or sent. Id. at 2-3. Set forth between the Ferland Declaration and the Long Policy is an unsworn cover letter dated September 14, 2021 from someone whose signature line indicates he works in Chubb's Personal Risk Services Operations group, stating that the "enclosed policy is a true and accurate copy." Id. at 1.

Second, in support of its reply papers on the instant motion, Great Northern submitted a sworn affidavit from Jeffrey Pinto, who states he is a "Senior Underwriter at Chubb" and "the underwriter of the Masterpiece policy issued by Great Northern to Philip and Jamila Weintraub." Affidavit of Jeffrey Pinto ¶ 1, ECF 26-2. The Pinto Affidavit attaches "[a] true and correct copy of the Coverage Summary sent to Philip and Jamila Weintraub upon renewal of the Policy for the

2018-2019 Policy Period." Id. ¶ 2. The attached policy starts with the same letter to the insured, except instead of the "INSURED 09/13/21 23.57.31" stamp at the bottom is a red stamp reading "Reference Copy." ECF 26-2 at 2 ("Renewal Policy"). The Pinto Affidavit does not explain when, if ever, the Weintraubs were provided access to the Long Policy. In their opposition and sur-reply papers, plaintiffs dispute the authenticity of the Long Policy, since reading the two defense affidavits together, the Long Policy's provenance is murky. ECF 15 ("Opp.") at 9; ECF 28 ("Sur-Reply") 1-2.

## II.  **Legal Standard**

To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

On a motion to dismiss, the Court must generally restrict its analysis to the allegations made in the Complaint. "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although

---

[2] Unless otherwise specified, all internal quotation marks, alterations, omissions, and emphases are omitted from all sources quoted herein.

not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). A document is rendered "'integral' to the complaint ... where the complaint relies upon its terms and effects." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). However, before the Court may consider "a document ... 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "it must also be clear that [there are] no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

## III.  Analysis

Great Northern moves under Rule 12(b)(6) for dismissal, arguing that the Weintraubs failed to provide timely notice of loss, thereby failing to establish a necessary condition precedent to coverage. Accordingly, Great Northern argues that coverage was correctly denied for late notice of loss, so the instant complaint fails to state a claim upon which the Court may order it to cover the allegedly stolen antiquities. Plaintiffs' opposition raises three issues: (i) whether Great Northern may enforce the notice of loss provision, since the Weintraubs allegedly lacked any access to a version of the policy documents that included the notice of loss provision; (ii) whether the Weintraub's notice was untimely as a matter of law; and (iii) whether Great Northern is precluded from raising a late notice defense because Chubb undertook a burdensome, twenty-month investigation of the merits of the Weintraub's claim before disclaiming for late notice. The Court

addresses these three issues in turn and denies the motion to dismiss for the reasons set forth below.

## A. **The Applicable Contract**

The Weintraubs argue that the notice of loss provision is unenforceable against them because the version of the policy that Great Northern delivered in connection with the August 18, 2019 renewal was incomplete and did not include any provision requiring a notice of claim. Opp. 8. Specifically, the Weintraubs allege that neither the printed version of the policy that they received nor the version available on Chubb's online client portal included the notice of loss provision. Compl. ¶ 44. Accordingly, the Weintraubs purport to sue on the version of the policy as delivered, which they allege is a valid and enforceable contract. Id. ¶ 49. They argue that "[t]he failure to furnish a policy containing [a] proof of loss provision provided for in [New York State insurance law] may result in waiver" of conditions precedent to coverage. Varda, Inc. v. Ins. Co. of N. Am., 701 F. Supp. 57, 59 (S.D.N.Y. 1988) aff'd 45 F.3d 634 (2d Cir. 1995).

Great Northern responds that the Weintraubs "insured property with [it] and its affiliated companies since 1990, and renewed the same policy each year." ECF 27 ("Reply") 2. Great Northern locates the notice of loss provision on page Y-5 of the "Policy Terms" section in the Long Policy. ECF 8-1 ("Mot.") at 3. It states:

**Your duties after a loss**
If you have a loss this policy may cover, you must perform these duties:
**Notification.** You must notify us or your agent of your loss as soon as possible.

ECF 26-6 at 9. But the Policy Terms section does not appear in the Renewal Policy delivered to the Weintraubs. See generally ECF 26-2. And Great Northern nowhere contends that the notice of loss appears in the Renewal Policy. Great Northern describes the Renewal Policy as "a coverage summary annually provided to insureds on renewal that simply summaries the coverages and references the Policy," by which it means the Long Policy submitted in support of its motion, and it asserts that "all terms and conditions of the Policy apply regardless of whether the fully copy of the Policy was delivered to Plaintiffs." Reply at 2-3.

Plaintiffs' counsel agreed at oral argument that the Renewal Policy submitted in support of Great Northern's reply is the version of the policy that the Complaint alleges the Weintraubs received in print and through the Chubb website. The Renewal Policy states on its first page that "[I]n this mailing, you'll find a copy of your new policy to review." ECF 26-2 at 3. While the letter tells the insureds not to "forget to register for our Client Portal" and explains that they could use the Chubb mobile app to "view[ their] policy," it does not refer to a different, long-form policy with additional terms available online." Id.

Defense counsel represented at argument that the Long Policy was available to the Weintraubs through Chubb's website. See Transcript of oral argument 11/12/2021 ("Tr."). But even aside from the fact that the Court cannot make a factual determination based solely on the factual averments of counsel, reliance on this assertion would be

prohibited in any event, since it flatly contradicts the Complaint's allegation that only the Renewal Policy was available to the Weintraubs online, Compl. ¶ 44. This is a motion to dismiss, so the Court "must take all of the factual allegations in the complaint as true." Iqbal, 556 U.S. at 678. Therefore, the Court must assume on the present record that the Weintraubs were never provided access to the Long Policy.

If the Weintraubs never received access to the Long Policy, then the relevance of that document is doubtful. Great Northern relies on the "maxim of New York law," Reply 3, that "plaintiffs cannot seek the benefit of the coverage provided by the [insurance policy] without being subject to the limitations of that coverage," Hirshfeld v. Maryland Cas. Co., 249 A.D.2d 274, 275 (2d Dep't 1998). It is also well established that under New York insurance law, "[n]either delivery nor actual possession by the insured is essential to the completion of a contract of insurance." 68A N.Y. Jur. 2d Insurance § 778. Accordingly, New York courts routinely enforce coverage limitations contained in undelivered parts of an insurance policy that were nonetheless "incorporated by reference" by the delivered policy, "regardless of whether the plaintiffs received actual delivery of the [pages containing the coverage limitation]." Hirschfeld, 249 A.D.2d at 275; accord Ruiz v. State Wide Insulation & Const. Corp., 269 A.D.2d 518, 519 (2d Dep't 2000). Great Northern therefore argues that the Weintraubs "cannot create a genuine issue of material fact over whether the Policy's notice provision applies because the copy delivered is not the contract that controls." Reply 3.

But this New York rule -- that a coverage exclusion is enforceable even if the insurer failed to deliver the relevant provision -- does not clearly apply to these facts. The notice of loss provision at issue is a procedural requirement that acts as a condition precedent to coverage, not a limitation on the scope of coverage under the policy, which was at issue in Hirshfeld and Ruiz. Defendants have not provided authority indicating that New York courts enforce against insureds procedural conditions precedent to coverage contained in undelivered portions of insurance policies where the insureds did not admit their awareness of the procedural requirements. Moreover, as the Weintraubs argue, Great Northern's cases applying undelivered procedural provisions are further distinguishable because they rely on admissions by the insured that they were aware of the specific requirements at issue. See Sur-Reply 3-6; Reply 3-4.

For instance, Great Northern relies on the Second Department's decision in Maurice v. Allstate Ins. Co. that affirmed the denial of coverage for the insured's "refus[al] to answer material and relevant questions at [an] examination under oath," which constituted a material breach of the policy, even though the insured never received a copy of the policy containing the provision requiring submission to an examination under oath. 173 A.D.2d 793, 793-794 (2d Dep't 1991). But Maurice relied on the fact that the insured admitted "under oath that, pursuant to the terms of his insurance contract, he was required to participate in the examination." Id. at 794. Similarly, Brackman, M.D. v. Med. Liab. Mut. Ins. Co., enforced an arbitration provision that

was allegedly "never received and/or signed off on" because "the plaintiff's knowledge and limited participation in the [arbitration] process constituted[d] a clear waiver of th[e] claim" that the arbitration provision was not an enforceable part of the insurance policy. 28 Misc. 3d 1222(A), at *4-*5 (Nassau Cty. Sup. Ct. 2010).

The Weintraubs also cite cases expressly holding that issues of fact are raised by an insurer's failure to deliver portions of a policy establishing procedural conditions precedent to coverage. For instance, in Pedrick v. Com. Union Ins. Co. the plaintiff alleged that the insurer never provided her with a copy of the policy that specified the procedure for submission of sworn proof of loss. 511 N.Y.S.2d 194, 195 (Oneida Sup. Ct. 1986), aff'd 132 A.D.2d 980 (4th Dep't 1987). The insured had failed to adhere to the letter of the policy in a manner that supported an absolute defense to coverage. Id. Nonetheless, the Court denied the insurer's motion for summary judgment and held that "[i]f established at trial, the failure to furnish a copy of the policy could result in a waiver by defendant since the 60-day requirement, while set out in Section 3407 of the Insurance Law, is, in the words of the statute, tied to the furnishing of proofs 'as specified in such contract.'". Id.  See also Guadagno v. Colonial Co-op. Ins. Co., 101 A.D.2d 947, 947 (3d Dep't 1984) (If insurer failed to deliver policy with procedural requirements for a claim, "it may be estopped from relying on the provision" to deny claim.). Surveying this case law, Varda held that a "plaintiff's contention that the policy it received did not contain [a particular procedural] provision does raise a

triable issue of fact with respect to [whether the procedural requirement has been waived.]" 701 F. Supp. at 60.

Great Northern attempts to distinguish these cases by pointing out that they addressed a 60-day proof of loss deadline included in the New York Insurance Law's form contract for fire insurance. Reply 4-5. But Great Northern does not explain why the holding that failure to deliver portions of a contract containing a procedural requirement expressly provided for in a statutory form contract is inapposite. Indeed, the Court concludes that the rationale for construing as waiver the insurer's failure to deliver is stronger in the case of a bespoke procedure than for a standardized contract term.

As the Weintraubs argue, and the Court agrees, there is a sensible policy rationale for applying different rules to coverage limitations and procedural requirements. Allowing an insurance contract to be formed without deliver operates as a protection for insureds, so it is a well-established and appropriate corollary that exclusions limiting an insurer's risk should be enforced regardless of those exclusions' actual delivery or whether an insured read the exclusions, see Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416-417 (1920). In contrast, the Weintraubs contend it was reasonable for them to pull out their latest policy documents, either in print or through the insurer's online portal, after having suffered a loss and to follow the requirements set forth therein. Sur-Reply 2. In their su-reply papers, plaintiffs conceded that they were generally aware that their policy obliged them to timely notify the insurance carrier of a loss.

Id. But unlike in Maurice, 173 A.D.2d at 793-794, and Brackman, 28 Misc. 3d 1222(A), at *4-*5, the Weintraubs deny they were aware of the specific policy requirements to notify the insurer "as soon as possible." Consequently, they argue, it would be unfair to deny coverage for failure to adhere to a procedure that operates as a condition precedent to coverage when they were unable to view an explanation of the required procedure either on the policy documents delivered to them or through the carrier's online client portal. Sur-Reply 2.[3] At oral argument, Defendant's counsel stated that it was the insurer's position that the Long Policy's notice of loss provision was enforceable because the Weintraubs could have accessed the Long Policy online, not that they should have recalled or found the original policy documents from 1990. See Tr.

The above discussion establishes, at the very least, that the Long Policy's relevance is disputed. The Long Policy is relevant only if it is the controlling contract through which Great Northern may assert its late notice defense. But considering the case law reviewed above, the Court concludes that the portions of the Long Policy not included in the Renewal Policy are enforceable only if the Weintraubs

---

[3] This statement does not ultimately amount to much, if any, concession, since the Long Policy submitted with the Ferland Declaration only purports to be effective from August 18, 2019 through August 18, 2020, so it is clearly not the original 1990 version of the policy. Accordingly, whether it would be reasonable to hold the Weintraubs to procedures set forth only in the initial 1990 policy is a question with no bearing on determining if the Long Policy submitted by Mr. Ferland is relevant to the issues at play in the instant motion and thus whether the Long Policy should be admitted into the limited record upon which this Order must be decided.

had reasonable access to the Long Policy. This is clearly a genuine issue of fact, though one that the Complaint's allegations oblige the Court to resolve in the Weintraubs' favor for now. Moreover, as stated above, the Weintraubs dispute the Long Policy's authenticity, because reading Great Northern's two affidavits together leaves the Long Policy's provenance murky. And since both the relevance and authenticity of the Long Policy are disputed, binding Second Circuit precedent prohibits the Court from predicating dismissal on the Long Policy, regardless of whether it is ultimately integral to Complaint. See Faulkner, 463 F.3d at 134.

With the Long Policy excluded from the record for the purpose of this motion, there is no contractual basis for dismissal of the Complaint for the Weintraubs' alleged failure to timely notify Great Northern of their loss. This alone suffices to deny Defendant's motion to dismiss.

Nonetheless, even if the Court were to consider the Long Policy on this motion, denial of the motion to dismiss would still be in order. As explained further below, there are other genuine issues of fact that are material to determining whether Great Northern may assert a late-notice defense.

**B. <u>Timeliness of Notice</u>**

Assuming that the Long Policy's notice of loss provision were cognizable on this motion and enforceable, the next question would be whether the Weintraubs' 91-day delay in notifying Great Northern of their loss violated their contractual duty. For the reasons set forth

below, the Court holds that the Weintraubs' late notice of loss was unreasonable as a matter of law, and so they would have failed to establish a necessary condition precedent to coverage, provided that Great Northern is entitled to assert a late-notice defense.

The Long Policy's notice provision directs insureds that after a loss, "[y]ou must notify us or your agent of your loss as soon as possible." ECF 26-6 at 9. "Timely notice is a condition precedent to insurance coverage under New York law, and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice. A notice obligation is triggered when "the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995). New York courts (and the Second Circuit) enforce uncontroverted violations of notice of loss provisions on motions to dismiss unless there is a valid excuse asserted by the insured[4] or waiver by the insurer, because they "enable

---

[4] Courts have recognized that untimely notice may be excusable if, for instance, "the insured lacks, or is incapable of acquiring, knowledge of the occurrence; or the insured is out of the state; or in good faith reasonably believes there is no policy coverage or that the insured was not liable on the main action." Kason v. City of New York, 373 N.Y.S.2d 456, 459 (N.Y. Cty. Sup. Ct. 1975). While the Weintraubs argue that their delayed notification is excusable because it took time to inventory their collection and determine which, if any, items were missing, they cite no authority establishing that this would constitute a legitimate excuse under New York law. Even if, in the immediate days after discovering their storage room was in disarray, the scope of their loss was unclear, the fact that the Weintraubs reported the suspected theft to the local police department within a week of discovery confirms that they did not "lack[] [n]or [were they] incapable of acquiring knowledge of the occurrence" giving rise to a potential claim. Id. Therefore, the Weintraubs have not

insurers to make a timely investigation of relevant events and exercise early control over a claim." Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987). However, "the insured has the burden of showing the reasonableness of such excuse." White by White v. City of New York, 81 N.Y.2d 955, 957 (1993). "[T]he insurer need not show prejudice before it can assert the defense of noncompliance" with a notice of loss provision. Sec. Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440 (1972).

The Weintraubs argue that ambiguities in the notice of loss provision prevent the Court from concluding that they failed as a matter of law to establish this condition precedent to coverage. But that position is foreclosed by caselaw.

While the notice of loss provision's requirement to report a loss "as soon as possible" does not establish a bright line, New York courts are well acquainted with this contractual language. Courts have construed similar "provision[s] that notice be given 'as soon as practicable' after an accident or occurrence, [to] merely require[] that notice be given within a reasonable time under all the circumstances." Sec. Mut. Ins. Co. of New York, 31 N.Y.2d at 441. Great Northern cites a litany of cases holding that delays in notification shorter than 91 days were unreasonable as a matter of law. See Mot. 6-7. See, e.g., Goodwin Bowler Assocs., Ltd. v. E. Mut. Ins. Co., 259 A.D.2d 381 (1st Dep't 1999) (two months); Horowitz v.

_____

identified any factual issues that prevent the Court from concluding
that they lacked a cognizable excuse for delay.

Transamerica Ins. Co., 257 A.D.2d 560, 561 (2d Dep't 1999) (reversing denial of insurer's motion for summary judgment and holding there was no issue of fact as to the reasonableness of a 48-day delay in providing a notice of loss). Surveying the case law, the Second Circuit has concluded that "[u]nder New York law, delays for one or two months are routinely held unreasonable." Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 440 (2d Cir. 1995). Accordingly, the Court concludes that the Weintraubs' 91-day delay in notifying their insurer of the suspected theft was unreasonable as a matter of law.

The Weintraubs also argue that "loss" -- a term the policy does not define -- is ambiguous, because "it is plausible 'loss' could mean confirmation the property is permanently destroyed or actually stolen," not that "some items 'appeared' to be missing and also possibly to be later found or recovered." Opp. 10. Therefore, the Weintraubs argue, a question of fact exists as to whether the Weintraubs reasonably waited to notify the insurer until the local police had closed their investigation and they knew conclusively that the items would not be recovered. But, as mentioned above, "[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." Sparacino, 50 F.3d at 143. Great Northern aptly analogizes this case to Minasian v. IDS Prop. Cas. Ins. Co., in which the Second Circuit affirmed a grant of summary judgment in favor of the insurer because the insureds' 86-day delay in providing notice of a theft was

unreasonable as a matter of law. 676 F. App'x 29, 31 (2d Cir. 2017).
Like the Weintraubs, the Minasian plaintiffs argued that "their delay
should be excused because (a) they reasonably believed that the police
investigation was ongoing and the jewelry might be located, and (b)
they notified defendants promptly after learning that the police
investigation was 'closed.'" Id. at 32. But the Second Circuit rejected
this argument: "Even assuming plaintiffs held the professed belief in
a possible recovery, that would not have prevented a 'reasonable
person' from suspecting 'the possibility of a claim,' so "such a belief
cannot form a reasonable -- and thus excusable -- basis for notice
delay." Id. (quoting Sparacino, 50 F.3d at 143). As the First
Department has explained:

> No exception is made for losses which appear insubstantial or
> which in the insured's estimation may not ultimately ripen into
> a claim. The import is clear; all losses are to be reported as
> soon as practicable if they are to become the basis of a claim.
> When the insured indefinitely reserves to itself the
> determination of whether a particular loss falls within the scope
> of coverage it does so at its own risk.

Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 340 (1st
Dep't 1986). The Weintraubs attempt to distinguish Minasian by arguing
that the policy in that case mentioned police and insurer notification
in the same clause and because those insureds "were unsophisticated
and thought the police might recover the items." Opp. 16. But neither
argument really distinguishes Minasian's reasoning, which is that if
an insured knows enough to report a suspected theft to the police,
then she knows enough to notify her insurance carrier.

Therefore, the Court concludes that if Great Northern may enforce the Long Policy's notice of loss provision, it would be entitled to dismissal as a matter of law. However, on the present record, Great Northern cannot obtain dismissal via the Long Policy's notice of loss provision for two reasons. First, as discussed above, the Complaint's allegations that Great Norther failed to deliver the Long Policy or otherwise make it accessible to the Weintraubs place the document's relevance and authenticity in dispute, and so the Long Policy would be an inappropriate basis for dismissal, even if it were "integral" to the Complaint. Second, as discussed below, there is a question of fact as to whether Great Northern waived any late-notice defense by embarking on a multi-year, burdensome investigation of the claim's merits before denying coverage for untimely notice of loss. The Court now turns to this final issue.

### C. <u>Preclusion of a Late-Notice Defense</u>

Assuming that the Long Policy's notice of loss provision were enforceable, the Weintraubs argue that Great Northern is nonetheless precluded from relying on a timeliness defense under theories of estoppel, repudiation, and waiver. As explained below, the Weintraubs' estoppel and repudiation arguments go nowhere. But the Court concludes that the waiver argument raises a factual issue: whether Great Northern's twenty-month claim investigation process, which allegedly imposed numerous costly and embarrassing burdens on the Weintraubs, amounted to implied waiver of the late-notice defense, notwithstanding that the insurer issued a letter at the start expressly reserving its

right to deny the claim for late notice. This issue of fact prevents the Court from determining whether Great Northern has waived the defense upon which its motion to dismiss relies. This accordingly provides an independent basis to deny the motion to dismiss.

a. Estoppel

The Weintraubs argue that Great Northern should be estopped from asserting the late-notice defense because it allegedly acted in bad faith during the claims processing investigation and thereby induced the Weintraubs to suffer prejudice as a result. The New York Court of Appeals has "[d]istinguished from waiver ... [the] principles of equitable estoppel, [which applies] in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so." Albert J. Schiff Assocs., Inc. v. Flack, 51 N.Y.2d 692, 69 (1980). Federal courts and the Appellate Division have not always been so careful to distinguish between waiver and estoppel of an insurer's coverage defenses, though the primary difference would appear to be that estoppel applies to substantive coverage limitations whereas waiver applies to procedural conditions precedent to coverage. See State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420, 1432 n. 12 (2d Cir. 1991); Provencal, LLC v. Tower Ins. Co. of New York, 138 A.D.3d 732, 734 (2d Dep't 2016). But in any event,

plaintiffs cite <u>Provencal</u> for the key principle of estoppel: "an insurer, though in fact not obligated to provide coverage, may be precluded from denying coverage upon proof that the insurer by its conduct, otherwise lulled the insured into sleeping on its rights under the insurance contract." 138 A.D.3d at 734. Here, however, as Great Northern argues, this principle actually demonstrates why Great Northern is not estopped from mounting a late-notice defense to coverage. The allegations do not explain how Great Northern's claims investigation process lulled the Weintraubs into not providing the insurer with timely notice of loss. Reply 10. Nor could they: Great Northern's allegedly burdensome claim investigation occurred <u>after</u> the Weintraubs had provided late notice. Therefore, the Court declines to find that the Great Northern is estopped from asserting a late-notice defense.

     b. <u>Repudiation</u>

The Weintraubs also assert that "Chubb repudiated the Policy by, in bad faith, putting the Weintraubs through an agonizing claims investigation process and demanding escalating and unnecessary proofs and documentation to verify the claim, only to disclaim, not on the merits, but on various technicalities, including late notice." Opp. 22. But their allegations do not support the test they cite: whether the insurer "distinctly, unequivocally, and absolutely refused to perform its obligations under the policy." <u>Varda, Inc. v. Ins. Co. of N. Am.</u>, 45 F.3d 634, 638 (2d Cir. 1995); <u>see</u> Opp. 22. Even if unduly burdensome and drawn out, as alleged, the insurer's extensive claim

investigation and regular communication with the Weintraubs bely the notion that Great Northern "refused to perform its obligations under the policy." <u>Varda</u>, 45 F.3d at 638. The Court therefore holds that Great Northern did not repudiate the policy.

          c. <u>Waiver</u>

Finally, the Weintraubs allege that Great Northern waived any late-notice defense by stringing them along for approximately twenty months, making burdensome, costly, and embarrassing demands while investigating the merits of the claim, before ultimately denying coverage, relying in part on the Weintraubs' late notice of loss. But Great Northern was fully aware of all details relevant to its late notice defense from the time the claim was made. It is well established that an insurer may waive a late-notice defense that it waits too long to assert. The wrinkle here is that Great Northern sent the Weintraubs a letter shortly after they filed their claim, in which the insurer purported to reserve its right to assert a late notice defense. Therefore, the question is if the insurer's subsequent claim handling may give rise to an issue of fact regarding implied waiver of the late notice defense, notwithstanding the initial reservation of rights letter. For the reasons explained below, the Court holds that such a question of fact has arisen, and it precludes dismissal.

"In the insurance context, New York law defines waiver as a voluntary and intentional relinquishment of a known right." <u>AMRO Realty Corp.</u>, 936 F.2d at 1431. And there is no question that New York law recognizes implied waiver of defenses to insurance coverage. "While

express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either; for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy." Kiernan v. Dutchess Cty. Mut. Ins. Co., 150 N.Y. 190, 195 (1896). Therefore, "[a]n irrevocable waiver may be found where "the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterward relied upon." AMRO Realty Corp., 936 F.2d at 1431.

The New York Court of Appeals has long held that an insurer can waive a defense to coverage where it treats a policy as valid and takes acts to impose costs on the insured:

> When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say any thing to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. **But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived**; and it is now settled in this court, after some difference

of opinion, that such a waiver need not be based upon any new agreement or an estoppel.

Titus v. Glens Falls Ins. Co., 81 N.Y. 410, 419 (1880) (emphasis added).

Here, Great Northern expressly reserved its right under the policy to assert a late-notice-of-loss defense in its November 25, 2019 letter to the Weintraubs, sent two days after the Weintraubs notified the insurer. See Reply 8; ECF 26-1 at 3.[5] The letter also stated that "any investigation made or action taken by [Great Northern or its representatives] ... on this claim is done with a full reservation of rights under the policy and with the understanding that any investigation or adjustment of the claim or any action whatsoever ... will not constitute a waiver of any rights under this policy." Id. There is ample authority that, in general, an insurer's letter expressly reserving its right to deny coverage for late notice of loss permits the insurer to later obtain dismissal of a coverage lawsuit on a late-notice defense. See, e.g., Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 274 (2d Cir. 1987). The rationale is straightforward: "It is also obvious that we would do neither insurers nor insureds any favor by compelling the former to make uninformed decisions as to whether insureds have complied with

---

[5] Great Northern submitted a declaration in support of its reply brief, attaching the November 25, 2019 letter. See ECF 26-1. The Complaint itself references this letter, see ¶ 43, so the Court may properly consider it on this motion to dismiss. See Sira, 380 F.3d at 67 (holding that reliance on a motion to dismiss is proper where "complaint explicitly refers to and relies upon ... the documents at issue").

conditions precedent. Insurers should therefore be allowed a reasonable period of time to investigate questions of coverage." Id.

The issue, then, is whether an insurer may impliedly waive its late-notice defense after having expressly reserved its rights. Clearly, a single reservation of rights letter is not enough to preserve a late-notice defense in perpetuity; at some point, failure to assert the defense must amount to its abandonment. Defense counsel conceded as much during argument. See Tr. But neither party, nor the Court, has identified authority on when it is appropriate to infer that an insurer has abandoned a previously reserved procedural defense to coverage.

The Weintraubs point to two categories of facts that, they argue, establish abandonment and thus implied waiver of the late-notice defense. First, and most significantly, the Weintraubs rely on the insurer's twenty-month investigation and adjustment process, during which time Great Northern's claim counsel allegedly propounded numerous burdensome, costly, and embarrassing demands for information while continually telling the Weintraubs that Great Northern would adjudicate the claim on its merits and in good faith. Compl. ¶ 20. However, "[t]here was no need for [Chubb] to wait ... before making its decision whether to assert a late-notice-of-occurrence defense, the availability of which was obvious and blatant from the face of the notice." AMRO Realty Corp., 936 F.2d at 1430.

New York courts have penalized insurers' undue delay in asserting late-notice defenses. For instance, the Second Department affirmed a

trial court determination that an insurer's "eight-month delay in disclaiming [coverage] based upon the plaintiff's late notice of claim was unreasonable as a matter of law," where the evidence showed that the insurer undertook no investigation related to the notice issue during that time. Inc. Vill. of Pleasantville v. Calvert Ins. Co., 204 A.D.2d 689, 689. (2d Dep't 1994); see also Ashland Window & Housecleaning Co. v. Metro. Cas. Ins. Co. of N.Y., 269 A.D. 31, 35, (1st Dep't 1945) ("When an insurer wishes upon proper grounds to disclaim liability, it must inform the assured promptly of such intention."). Here too, Great Northern's intervening investigation appears to have concerned the merits of the Weintraubs' claim. The defense has not identified any additional fact-development necessary to determine whether the Weintraubs' notice was untimely. Certainly, the November 25, 2019 reservation of rights letter bought Great Northern some time. But how long the insurer could reasonably wait to deny coverage, while allegedly peppering the Weintraubs with information requests, before it manifested abandonment of the late-notice defense is a factual question unsuitable to resolution on a motion to dismiss.

Second, the Weintraubs highlight the insurer's purported failure to expressly reaffirm its reservation of rights to assert a late notice of loss defense, even though it "issu[ed] numerous communications containing reservations on other grounds, but never again mention[ed] late notice." Opp. 20. If cognizable, this fact might be dispositive, since the Second Circuit has squarely held that "under New York law,

the act by an insurer of disclaiming on certain grounds but not others is deemed conclusive evidence of the insurer's intent to waive the unasserted grounds." AMRO Realty Corp., 936 F.2d at 1432. However, the Weintraubs' briefing cites no supporting allegations in the Complaint, nor could the Court locate any such allegations. Therefore, the current record lacks support for this contention.

The Court need not, and does not, decide now whether Great Northern waived its late-notice defense. It is enough to now hold that resolving the waiver issue depends on the resolution of factual questions. This is consistent with guidance from the Second Circuit, which has held that that "[i]t is clear that waiver is a proper issue for the trier of fact" Int'l Flavors & Fragrances, Inc., 822 F.2d at 273. Since in this posture the Court is bound to assume the truth of all the Complaint's factual allegations and to draw all plausible inferences in the Weintraubs' favor, the Court concludes that Great Northern would be precluded from obtaining dismissal as a matter of law on its late-notice defense if the Long Policy's notice of loss provision were enforceable in this action.

IV. **Conclusion**

As explained at length above, there are two independent bases to deny Great Northern's motion to dismiss. First, since the relevance and authenticity of the Long Policy is disputed, it would be inappropriate to dismiss the Complaint by enforcing a contractual term appearing only in this allegedly undelivered version of the insurance policy. Second, even if the notice of loss provision were enforceable

at this juncture, the Court holds that the Complaint has pled allegations sufficient to give rise to the plausible inference that the insurer abandoned its late-notice defense by allegedly engaging in a twenty-month investigation of the claim's merits before denying coverage for untimely notice of loss.

Were Great Northern to establish the factual basis necessary to enforce the Long Policy's notice of loss provision and to rebut the Weintraub's waiver argument, however, then the Weintraubs' failure to provide timely notice of loss would fully resolve this lawsuit before getting to the merits of the Weintraubs' coverage claim. Since resolving these two factual issues has the potential to dramatically streamline this litigation, the Court is willing, if the parties consent, to hold a limited-scope evidentiary hearing on these two issues in which the Court would act as the trier of fact (rather than leave this to a jury at a later stage of the case). Therefore, as discussed at the conclusion of argument on this motion, counsel are directed to initiate a joint phone conference with Chambers within one week of the entry of this order to state whether their clients consent to the Court holding a limited-scope evidentiary hearing as described. If both parties consent, the Court will set a hearing on that conference, along with a schedule for appropriate discovery. Otherwise, the case will proceed under the schedule previously set in the case management plan.

SO ORDERED.

New York, NY
November 29, 2021

JED S. RAKOFF, U.S.D.J.