```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

```
┌─────────────────────────────────────┐
│ PHILIP WEINTRAUB and                 │
│ JAMILA WEINTRAUB,                    │
│                                      │
│          Plaintiffs,                 │
│                                      │
│     -v-                              │
│                                      │
│ GREAT NORTHERN INSURANCE             │
│ COMPANY,                             │
│                                      │
│          Defendant.                  │
└─────────────────────────────────────┘
```

21-cv-7965 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

This lawsuit concerns a claim for insurance coverage for an apparent theft from a large, private collection of antiquities and art owned by plaintiffs Philip and Jamila Weintraub. Following an extended investigation into the merits of the claim, the defendant, Great Northern Insurance Company ("Great Northern"), denied the plaintiffs' claim, asserting inter alia that the Weintraubs had unreasonably delayed in filing a notice of loss with the insurer after they discovered that a storage room, located in the attic of a barn at their country home, was in disarray.

In an opinion dated November 29, 2021, the Court denied Great Northern's motion to dismiss, which argued that the Weintraubs' claim was correctly denied because their late notice of loss violated a purportedly necessary condition precedent to coverage. ECF 29 ("MTD Opin."). The Court determined that if Great Northern were entitled to enforce its notice of claim provision, then it would prevail outright, since the Weintraubs' notice of claim was unreasonably late as a matter

of law. However, assuming the truth of the allegations in the complaint and drawing all reasonable inferences in the Weintraubs' favor as required on a motion to dismiss, the Court held that there were two independent reasons why Great Northern's late-notice defense was inadequate to obtain dismissal.

First, the complaint alleged that neither the version of the applicable homeowner's insurance policy delivered to the Weintraubs by mail nor the one made available on the insurer's online portal included the page that contains the notice of loss provision upon which Great Northern's defense depends. While Great Northern maintained that the relevant page was contained in the purported full policy ("Long Policy"), the Court concluded that the Long Policy was not cognizable on the motion to dismiss because both its relevance and authenticity were disputed. The Court further held that the late-notice provision would be enforceable only if Great Northern could prove that it either delivered a copy of the Long Policy to the Weintraubs or that the Weintraubs otherwise had reasonable access to the Long Policy at the time of the claim. MTD Opin. 16-17.

Second, the Court agreed with the Weintraubs that their complaint alleged facts that gave rise to the plausible inference that Great Northern impliedly abandoned its late notice defense and so would be precluded from using it to obtain dismissal, notwithstanding that its first letter acknowledging the Weintraub's claim expressly reserved its rights with respect to the late notice. Specifically, the complaint alleged that Great Northern undertook a prolonged and burdensome

investigation into the Weintraubs' claim that dragged on long after Great Northern could have disclaimed on late notice. The Weintraubs also alleged that Great Northern failed to expressly reaffirm its reservation of rights to assert a late notice defense, because it issued "many letters" including "boilerplate reservations of rights never once mentioning late notice of claim." Compl. ¶ 43.[1] The Court therefore held that the question of whether Great Northern impliedly waived its late notice defense depended on the resolution of factual questions. MTD Opin. 30.

Defense counsel has made it clear that Great Northern suspects that the Weintraubs' insurance claim may be fraudulent, and it has expressly reserved its right to amend its declination of coverage to "disclaim coverage based on the policy provisions with respect to concealment or fraud." PX-42 at 3. But since the Court determined that the question of whether Great Northern may enforce its late notice defense was potentially dispositive and depends on a discrete set of facts that is largely distinct from those going to the merits of the Weintraubs' claim for coverage, the Court, with the parties' consent,

---

[1] The Weintraubs have subsequently admitted that this allegation is incorrect and that "after July 2020, there were multiple references to the reservation of rights in terms of late claim ... filing." Bench Trial Transcript ("Tr.") 109.

Unless otherwise specified, all internal quotation marks, citations, omissions, emphases, and alterations are omitted from all sources cited herein. Plaintiffs' exhibits admitted into evidence at trial are cited as "PX-__" and defendant's admitted exhibits are cited as "DX-__."

held a two-day limited-scope bench trial, preceded by expedited and limited discovery, to determine whether Great Northern could prove the factual predicate for dismissal of the suit on the basis of late notice of claim.

After careful consideration of the testimony and documents received in evidence, as well as the helpful written and oral presentations of counsel, the Court finds that Great Northern did not deliver the Weintraubs a copy of the Long Policy or otherwise make the Long Policy reasonably available online. The Weintraubs concede that they have received copies of the page of New York policy terms that contains the notice of claim provision as a component of other insurance policies -- both as part of the obsolete 2018-2019 policy covering their country home and as part of the homeowner's policy covering their country house. But Great Northern does not claim to have provided the Weintraubs with a copy of the relevant 2019 policy (the one covering their New York City apartment) that included the key page. As explained further below, the Court concludes that the failure to deliver or make reasonably available the Long Policy precludes Great Northern from relying upon the notice of claim provision.[2]

---

[2] Since the Court concludes that Great Norther lacks a contractual basis to assert a late-notice defense to coverage, the Court need not address the subsequent issue of whether Great Northern's conduct during its claims investigation amounted to an implied waiver of that defense.

## I. Findings of Fact

Pursuant to the parties' consent to waive their right to trial by jury on the discrete issues relevant to Great Northern's entitlement to assert its late-notice-of-claim defense, the Court makes the following findings of fact:

1. Phillip Weintraub, a New York City cardiologist, has collected art and antiquities since the 1970s, focusing on early American glass, paintings and furniture, Judaica and Persian rugs. He acquires these items by purchasing them from auction houses and dealers, and he also sells and trades items to upgrade his collection. In August 2019, the collection numbered over one thousand pieces, which the Weintraubs would display and store in their country house located in Wassaic, N.Y., in their New York City apartment, and in Dr. Weintraub's New York City office. Tr. 3-5, 103.

2. The Weintraubs have been insured by Chubb since the early 1990s. ECF 36 ("Stip.") ¶ 1.[3] In 2019, the Weintraubs maintained two homeowner's insurance policies with Chubb, which is a related entity to defendant Great Northern.[4] The policy relevant to the instant claim

---

[3] Before the bench trial, the parties entered 73 stipulated statements of fact that were accepted by the Court in the Joint Pre-Trial Order, ECF 36. These stipulations are cited as "Stip." and reference the paragraph number in the Joint Pre-Trial Order.

[4] The parties sometimes use "Great Northern" and "Chubb" interchangeably, since Great Northern, one of Chubb's underwriting companies, wrote the policy at issue in this claim, but it was serviced by Chubb and the claim was investigated by Chubb adjusters. For purposes of the issues at bar, it makes no difference, and the names are used interchangeably. Tr. 305.

is the Masterpiece Policy No. 11585221-05 ("Masterpiece Policy") underwritten by Great Northern and covering the Weintraub's New York City cooperative apartment. Stip. ¶ 7. The Masterpiece Policy included an Itemized Article Schedule of covered items from the Weintraubs' art and antiquities collection; at the time of the instant claim, there were approximately 800 scheduled items. Stip. ¶ 8. The Masterpiece Policy also covered personal liability, property damage, and mold remediation associated with the coop apartment. The second policy, which is not the policy upon which the Weintraubs have sued, is a homeowner's policy covering the Weintraubs' Wassaic county home written by Chubb's underwriter Pacific Indemnity ("Wassaic Policy"). Tr. 6-9.

3. Each time Dr. Weintraub purchased an item for his collection that he wanted to insure under the Masterpiece Policy, he would submit all supporting documentation, including catalog description, photographs, provenance, receipts, etc. to Chubb's agent. If Chubb agreed to insure the item, it would add the item to the Itemized Articles Schedule with a unique number, description, and insured value and adjust the Weintraubs' premium. When Dr. Weintraub sold an insured item, he would notify Chubb's agent and Chubb would delete the item from the Itemized Articles Schedule and reduce the Weintraubs' premium. Each time Chubb made a change to the Masterpiece Policy's Itemized Articles Schedule, it would issue a "Coverage Update" reflecting the details of the item and the nature of the change. These Coverage Updates were mailed to the Weintraubs and posted online at their Chubb

client portal. Tr. 9-10; PX-8, Stip ¶ 9. Dr. Weintraub handled the insurance mail, which also included monthly invoices, and Jamila Weintraub played no role in managing the Weintraubs' Chubb insurance or in making the instant claim. Tr. 6.

4.   Masterpiece Policy No. 11585221-05, upon which the Weintraubs have sued, was in place for the policy period August 18, 2019 to August 18, 2020 and was a renewal of the same policy that had run for the prior 12 months ("2018 Policy"), and for more than two decades before that. Stip. ¶ 7.

5.   Upon renewal on August 18, 2019, Chubb mailed the Weintraubs a new policy. Tr. 11; PX-3 ("2019 Policy"). In its second paragraph, the 2019 Policy states, "In this mailing, you'll find a copy of your new policy to review." PX 3 p. 3 of 91. Dr. Weintraub reasonably understood this language to mean that the document he received by mail was his insurance contract, and that it replaced the now-expired version of the Masterpiece Policy received the prior August. Tr. 13.

6.   Chubb operates an online client portal, and each insured party has an account that includes digital versions of the policy documents sent by mail. The insurance policy contracts corresponding to each annual renewal are stored on the client portal with a "Reference Copy" stamp at the bottom of each page. Tr. 12.

7.   Chubb's Masterpiece Policy is generally composed of various parts or coverage forms. Among the intended components of Chubb's Masterpiece Policy for a property located in New York is a set of pages known as the "New York Policy Terms" and indicated by page

numbers with the prefix "Y-___" (the "Y-Pages"). Page Y-5 of the New York Policy Terms contains, <u>inter alia</u>, a notice of loss provision, which states:

> **Your duties after a loss**
> If you have a loss this policy may cover, you must perform these duties:
>
> ...
>
> **Notification.** You must notify us or your agent of your loss as soon as possible.

PX-1 at 135.

8. The <u>2018</u> Policy, sent by mail to the Weintraubs and posted on their Chubb client portal, included the Y-Pages, including page Y-5.[5] DX-102. However, the <u>2019</u> Policy sent by mail to the Weintraubs did not include the Y-Pages. <u>See</u> PX-3. Specifically, Page Y-5 was not included in the 2019 Policy, nor did the 2019 Policy mailed to the Weintraubs include any other provision requiring timely notice of loss.

---

[5] Pursuant to a motion to compel, which the Court granted before the trial, plaintiff's counsel produced various copies of the Chubb policies. Among these was DX-55, which Dr. Weintraub assembled and sent to his counsel shortly after retention, in January 2020. Tr. 43-45. This package was assembled by Dr. Weintraub shortly after he suffered a brain injury that left him with temporary cognitive deficits. Tr. 45. The parties dispute where the various components of this policy came from (it appears parts came from the 2019 Policy and other parts, including a version of the Y-Pages, from either the 2018 Policy or the Wassaic Policy). But the Court need not resolve this issue, because Chubb's representative conceded during his testimony that the company never mailed the Weintraubs a full copy of the Long Policy, nor did Chubb post the Long Policy on the Weintraub's client portal. Tr. 331.

9.    The only notice in the 2019 Policy that the Y-Pages exist is a "Table of Contents," located on page 87 of the 89-page 2019 Policy.[6] The Table of Contents page states that it "lists your policy provisions," and includes a list of six items including a reference to the Y-Pages denoted as "Policy Terms." PX-3 at 89; Tr. 329. The Table of Contents is referenced on the cover letter for the policy with the following statement: "The **Table of Contents** will tell you which coverage forms apply to your policy." PX-3 at 13 (emphasis in original). The 2019 Policy's Table of Contents does not suggest that an insured should look at the 2018 Policy or any other document to find the Y-Pages. Id. Indeed, the Table of Contents page provides no instructions, other than page numbers, directing insureds where to access the listed coverage forms.

10.    A representative of Chubb testified that it is Chubb's "general practice" not to send a full policy to insureds upon renewal each year. Tr. 328-329. But Great Northern adduced no other evidence of this "general practice," whether in the form of other incomplete policies sent to the Weintraubs or any applicable internal policy or

---

[6] Chubb's representative testified that he "believed [the Table of Contents page] may have been [earlier]" in the policy. Tr. 331. But Great Northern provided no evidence that the Table of Contents page was positioned any more prominently than it appears in PX-3, which is represented to be the "Reference Copy" stored as a PDF on Chubb's client portal. Moreover, Great Northern itself submitted PX-3 in support of its motion to dismiss. The Court therefore finds that the Table of Contents appeared near the end of the 2019 Policy, even if it is Chubb's ordinary practice to insert these pages earlier in the policy. In any event, none of the Court's conclusions of law depend on this specific finding.

procedure.[7] Because the 2018 Policy included the Y-Pages, because the 2019 Policy repeatedly indicates that it is the full policy (and nowhere suggests it is a summary document), because the Chubb representative testified that the reference copy and certified copy would typically be identical, and because the 2019 Policy's Table of Contents' language and format suggests that the Y-Pages were intended to be included in the 2019 Policy, the Court finds that Chubb inadvertently omitted the Y-Pages from the Weintraubs' 2019 Policy.

11.  The digital version of the 2019 Policy, which Chubb refers to as the "Reference Copy," was also posted online to the Weintraubs' Chubb client portal. The version of the 2019 Policy posted on the portal account was materially identical to the version of the 2019 Policy that Chubb sent to the Weintraubs by mail, except that it has a stamp reading "Reference Copy" at the bottom of each page. Tr. 17-19, 327, 333; PX-3. Specifically, the version of the 2019 Policy available on the Weintraubs' online client portal did not include the Y-Pages. PX-3, Tr. 328.

12.  During this litigation, Great Northern produced a "certified copy" of the Weintraub's 2019-2020 Masterpiece Policy. PX-1. The certified copy contains the Y-Pages, including Y-5 with the notice of

---

[7] Great Northern points to a component of the 2019 Policy entitled "Coverage Summary" and indicating it is a "Renewal," but nothing in these four pages, located in the middle of the 2019 Policy, suggests that the 2019 Policy document as a whole purports to be only a "summary" of the actual Masterpiece Policy. See PX-3 at 13-16.

loss provision.[8] See PX-1 at 135. But a Chubb representative conceded that the "complete [2019] policy was not mailed to the Weintraub[s]." Tr. 331.

13.   Nonetheless, the evidence shows that the Weintraubs did have access to materially identical versions of the Y-Pages that Chubb asserts are a component of the 2019 Policy. Both the 2018 Policy and the Wassaic Policy contained the Y-Pages, and they were sent to the Weintraubs by mail and at least the 2018 Policy was available on the Chubb client portal. See DX-102 (2018 policy); Tr. 45. Indeed, after Dr. Weintraub received a November 2019 letter from Chubb reserving its right to disclaim for late notice, Dr. Weintraub reviewed the late notice claim, indicating he had a copy of page Y-5, according to the testimony he gave at an examination under oath, which was taken in connection with the claim investigation. Tr. 199. But nowhere in the 2019 Policy or on the Chubb client portal is the insured directed to refer to documents from another policy (or the policy documents from a prior year). Nor is there evidence that the Weintraubs were ever directed by Chubb or their insurance broker to refer to other policies for complete terms and conditions.

14.   Upon receiving his renewal policy, Dr. Weintraub's practice was to compare the Itemized Articles Schedule in the renewal policy with the Coverage Updates that he had received in the last year, to

---

[8] The "certified copy" was submitted by Great Northern in support of its motion to dismiss and referenced in the Court's opinion as the "Long Policy."

ensure that Chubb had correctly accounted for changes in his collection. However, Dr. Weintraub did not have a practice of comparing the renewal policy to the expired policy. After receiving the renewal policy, Dr. Weintraub would dispose of the expired policy, which he did not believe he needed any longer. Tr. 12-14. Dr. Weintraub followed this practice in August 2019 and disposed of the 2018 Policy that he had received by mail the previous year. Tr. 13, 121. However, the 2018 Policy remained available for download on the Chubb client portal.

15.   On August 25, 2019, Dr. Weintraub discovered that a storage room, located in the barn on the property of the plaintiffs' Wassaic country house, was askew. PX-14; Tr. 21. The room contained boxes that stored items from the Weintraubs' antiquities and art collection, including numerous items listed on the Itemized Articles Schedule. Dr. Weintraub, who suspected theft, made a police report on August 30, 2019. Stip. ¶ 11. Following an investigation, the police informed Dr. Weintraub in November that the investigation had been unsuccessful. Tr. 23. Dr. Weintraub then called Chubb on November 23, 2019 to make the instant claim for insurance coverage. Tr. 24; Stip. ¶ 12. Chubb acknowledged the claim in a letter dated November 25, 2019. Stip. ¶ 25.

16.   Dr. Weintraub had made several previous claims under the Masterpiece Policy. See Stip. ¶¶ 2-6. His practice was to call the telephone number for the Chubb call center that was listed on his monthly invoices. Tr. 15-16. He followed the same process in August 2019 for the instant claim and did not look at the policy documents

before calling. Tr. 16. The Court credits Dr. Weintraub's testimony that at the time he received Chubb's November 25, 2019 letter reserving its rights to disclaim on late notice, he was "not aware" that there was a policy provision requiring him to make a claim "as soon as possible." Tr. 26, 114.

## II.  <u>Conclusions of Law</u>

In its previous opinion denying Great Northern's motion to dismiss, the Court surveyed case law from New York State courts and from this court holding that an insurer's failure to deliver the components of an insurance policy setting forth procedural conditions precedent to coverage could result in waiver of the procedural requirement. <u>See</u> MTD Opin. 12-16. Reviewing the record at that time, including the allegations that the 2019 renewal of Weintraubs' Masterpiece Policy was never delivered to the Weintraubs by mail or posted to their client portal, the Court held that the relevance of the Long Policy was disputed and so not cognizable in that posture. <u>Id.</u> at 16-17. The Court now holds that Great Northern's failure either to deliver the Y-Pages with the 2019 Policy or to provide the Weintraubs with reasonable access to the Long Policy through the client portal precludes Great Northern from disclaiming coverage on the basis of the insured's failure to comply with the notice of loss provision located on one of the omitted pages.

Great Northern contends that the contents of the omitted Y-Pages are incorporated by reference to the 2019 Policy through the Table of Contents page's reference to the Y-Pages. ECF 43 ("Def. Post-Trial

Mem.") at 8. Great Northern further contends that the Weintraubs were given adequate access to the Y-Pages through the version of the Y-Pages contained in the 2018 Policy (available online and previously mailed to the Weintraubs) and/or through the Wassaic Policy. However, the Court is not persuaded that this confluence of factors amounts to delivery of the Y-Pages adequate to support enforcement of a procedural condition precedent to coverage therein.

Great Northern continues to rely on the proposition that under New York insurance law, "[n]either delivery nor actual possession by the insured is essential to the completion of a contract of insurance." 68A N.Y. Jur. 2d Insurance § 778; see Def. Post-Trial Mem. 9 n. 12. Accordingly, New York courts routinely enforce coverage limitations contained in undelivered parts of an insurance policy that were nonetheless "incorporated by reference" by the delivered policy, "regardless of whether the plaintiffs received actual delivery of the [pages containing the coverage limitation]." Hirshfeld v. Maryland Cas. Co., 249 A.D.2d 274, 275 (2d Dep't 1998); accord Ruiz v. State Wide Insulation & Const. Corp., 269 A.D.2d 518, 519 (2d Dep't 2000). This follows from the principle that "plaintiffs cannot seek the benefit of the coverage provided by [an insurance policy] without being subject to the limitations of that coverage," Hirshfeld, 249 A.D.2d at 275.

But, as the Court explained in denying the motion to dismiss, the rule that a coverage exclusion is enforceable even if the insurer failed to deliver the relevant provision does not necessarily imply

that the Court must excuse an insurer's failure to deliver a <u>procedural requirement</u> such as the notice of loss provision. <u>See</u> MTD Opin. 13. At the time of the briefing on the motion to dismiss, Great Northern did not provide authority indicating that New York courts enforce against insureds procedural conditions precedent to coverage contained in undelivered portions of insurance policies where the insureds did not admit their awareness of the procedural requirements. <u>See</u> <u>id.</u>

Great Northern relies now on two Appellate Division cases for the proposition that the Y-Pages' incorporation by reference via the Table of Contents page is sufficient, notwithstanding its failure to deliver the Y-Pages with the 2019 Policy, to provide reasonable access to the Long Policy (<u>i.e.,</u> a version of the 2019 renewal policy containing the Y-Pages), or to indicate to Weintraub where to find the Y-Pages. <u>See</u> Def. Post-Trial Mem. 8 n. 9. In its prior opinion, the Court already distinguished one of Great Northern's two cases, <u>Ruiz v. State Wide Insulation & Const. Corp.,</u> because <u>Ruiz</u> applied the familiar New York rule excusing a failure to deliver only to an undelivered coverage exclusion, not to an undelivered procedural requirement. <u>See</u> 269 A.D.2d at 518-519 (discussing exclusion of coverage for a fire that started while the insured was performing a roof repair, because "the scope of the activity covered by his policy ... was limited to 'painting'"); MTD Opin. 13. Great Northern offers no reason to revist that distinction. Great Northern's other case, <u>Matter of Metro. Prop. & Liab. Ins. Co. (Traphagen)</u>, also concerns a dispute over the insurer's failure to deliver a provision concerning the scope of coverage, so

it is distinguishable for the same reason. 199 A.D.2d 915, 915–16 (3d Dep't 1993). Moreover, in <u>Traphagen</u>, the plaintiff sought coverage for excess bodily injury where the other, offending driver was purportedly underinsured, and the Third Department affirmed on the independent basis that the denial of underinsurance coverage was required by a section of the Insurance Law that precluded underinsurance coverage unless the offending vehicle had less insurance than the policyholder. <u>Id.</u> at 916 (citing Ins. L. § 3420(f)(2)). Therefore, neither of Great Northern's cases establishes that a single reference to the generic "Policy Terms" document, which was never delivered with the applicable insurance policy, suffices to incorporate by reference procedural conditions precedent to a claim contained therein.

Great Northern further argues that the Weintraubs' receipt of the Y-Pages as part of policies other than the one sued upon -- specifically, the 2018 Policy and the Wassaic Policy -- provides reasonable access to the provisions therein. In its strongest version of this argument, Great Northern asserts that the 2019 Policy "incorporates by reference the earlier delivered 2018 policy." Def. Post-Trial Mem. 9. But Great Northern fails to cite any provision in the 2019 Policy to support this contention. And nothing in the plain language of the 2019 Policy indicates that it incorporates by reference insurance contracts from prior years. The document the Weintraubs received in the mail is "a copy of your new policy" that covers the one-year period specified on the first page. PX-3. Moreover, the policy includes a page entitled "Introduction" (though mysteriously appearing

at the end of the policy, cf. n. 6 supra) that states "This is your
Chubb Masterpiece Policy." PX-3 at 90. Then, under the heading
"Agreement" it continues:

> We agree to provide the insurance described in this policy in
> return for your premium and compliance with the policy conditions.

Id. The same page also defines "Policy" to "mean[] your entire
Masterpiece Policy, including the Coverage Summary and any Mortgagee's
Coverage Summary." Id. (As noted above, one of the components of the
2019 Policy is a document entitled "Coverage Summary."[9] PX-3 at 13-
16.) Therefore, the Court declines to find that the 2019 Policy
incorporates the 2018 Policy by reference.

Nor is it enough that the Weintraubs received the same policy
terms as parts of distinct insurance contracts. The Court previously
held that the issue for this proceeding is whether Great Northern
delivered or made the Long Policy available to the Weintraubs, not
whether the Weintraubs could have recreated the Long Policy by
comparing distinct contracts and cutting and pasting portions of them
that had been omitted from the 2019 Policy. While insureds are expected
to know the scope of coverage they purchased, Great Northern has cited
no case holding that insureds are expected to comply with procedural
requirements not provided to them in the relevant contract. Nor does
Great Northern provide any authority suggesting that the relevant

---

[9] The same Definitions section tautologically defines "Coverage
Summary" as "the most recent Coverage Summary we issued to you,
including any subsequent Coverage Updates." PX-3 at 90.

inquiry is whether a policy document contains a clue sufficient for an insured to recognize it is missing pages, that those missing pages might contain procedural requirements, that other contracts in their files contain pages similarly named and numbered, and that the same procedures apply to the relevant policy.

Rather, the Court reaffirms its earlier reading of the case law holding that an insurer may waive procedural conditions precedent to coverage if it fails to deliver the relevant portions of the policy. For instance, in Pedrick v. Com. Union Ins. Co. the plaintiff alleged that the insurer never provided her with a copy of the policy that specified the procedure for submission of sworn proof of loss. 511 N.Y.S.2d 194, 195 (Oneida Sup. Ct. 1986), aff'd 132 A.D.2d 980 (4th Dep't 1987). The insured had failed to adhere to the letter of the policy in a manner that supported an absolute defense to coverage. Id. Nonetheless, the Court denied the insurer's motion for summary judgment and held that "[i]f established at trial, the failure to furnish a copy of the policy could result in a waiver by defendant since the 60-day requirement, while set out in Section 3407 of the Insurance Law, is, in the words of the statute, tied to the furnishing of proofs 'as specified in such contract." Id.  See also Guadagno v. Colonial Co-op. Ins. Co., 101 A.D.2d 947, 947 (3d Dep't 1984) (If insurer failed to deliver policy with procedural requirements for a claim, "it may be estopped from relying on the provision" to deny claim.). Surveying this case law, Varda, Inc. v. Ins. Co. of N. Am. held that a "plaintiff's contention that the policy it received did not contain

[a particular procedural] provision does raise a triable issue of fact with respect to [whether the procedural requirement has been waived.]", 701 F. Supp. 57, 60 (S.D.N.Y. 1988).

As previously explained, see MTD Opin. 15, there is a sensible policy rationale for applying different rules to undelivered coverage limitations and procedural requirements. Allowing an insurance contract to be formed without delivery operates as a protection for insureds against being left unprotected by a insurer's error, so it is a well-established and appropriate corollary that exclusions limiting the insurer's risk should be enforced regardless of those exclusions' actual delivery or whether an insured read the exclusions, see Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416-417 (1920). In contrast, it is reasonable for insureds to pull out their latest policy documents, either in print or through the insurer's online portal, after having suffered a loss and to follow the requirements set forth therein. In sum, the Court concludes that the insurer cannot deny coverage by insisting that its insureds strictly comply with a procedural requirement while simultaneously asking the Court to excuse the company's own, directly related procedural fumble.

The Court therefore concludes that Great Northern neither delivered the Long Policy to the Weintraubs nor made the Long Policy reasonably available. Accordingly, the Court concludes that there is no contractual basis for Great Northern to enforce the requirement that notice of loss "as soon as possible" is a condition precedent to coverage.

### III.  **Conclusion**

Because the Court has concluded that Great Northern's late-notice defense lacks a contractual basis, that defense is precluded. There is no need to address the second issue addressed at the trial, namely the Weintraubs' argument that Chubb's conduct during the investigation impliedly waived its reservation of rights as to a late-notice defense.

However, as noted above, Chubb's July 16, 2021 letter declining coverage expressly reserved Chubb's right "to disclaim coverage based upon the policy provisions with respect to concealment or fraud, the failure of the insureds to commence suit within two years after the loss occurred under the predecessor policy and the intentional acts/misappropriation exclusions." PX-43 at 3. Should Chubb amend its reasons for declining coverage, Great Northern may convene a joint phone conference with Chambers and seek leave to amend its answer, to interpose associated defenses in this lawsuit.

When the Court set this limited-scope bench trial, for which the parties took expedited and limited discovery, it ordered that discovery would be stayed after the bench trial. See Minute Entry 12/6/2021. That stay is hereby lifted. The parties are directed to meet and confer and jointly prepare a proposed case management plan to structure the rest of this litigation, using the model form available on the Court's website. The parties are further directed to email that proposed case management plan to the Court and then convene a joint phone conference with Chambers. The parties shall convene this phone conference within one week of the entry of this order.

        SO ORDERED.

New York, NY
March 15, 2022                          _____
                                        JED S. RAKOFF, U.S.D.J.