UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP WEINTRAUB and
JAMELIA WEINTRAUB,

-v-

GREAT NORTHERN INSURANCE CO.,

Defendant.

21-cv-07965 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

This case relates to Philip and Jamelia Weintraubs' insurance claim for about $1.5 million of art they claimed was found missing from their storage space in August 2019. The Weintraubs' insurer -- the Great Northern Insurance Co., a/k/a Chubb ("Chubb") -- investigated the Weintraubs' claim for about a year before finally denying coverage in July 2021 on three grounds: 1) that the Weintraubs failed to notify Chubb of the loss "as soon as possible," as required by certain "Y pages" putatively attached to the Weintraubs' 2019 insurance policy; 2) that the Weintraubs failed to provide a sworn proof-of-loss statement within 60 days of Chubb's January 2020 request that they do so (as also required by these Y pages); and 3) that the Weintraubs failed to establish that the loss occurred during the coverage period. See Joint Pretrial Consent Order ("Consent Order")[1] at 20, Dkt. 37. On

---

[1] All capitalized terms here used refer to the definitions set forth in this Order, unless otherwise specified. All internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources. Facts relevant to this case are set out in detail in this Court's March 30, 2022 post-trial

1

consent of the parties, the Court previously conducted a limited bench trial on the first of these issues -- whether the Weintraubs were required but failed to notify Chubb of their claim "as soon as possible" -- and found that Chubb was precluded from disclaiming coverage on this basis because the "Y pages" containing the "as soon as possible" requirement were not included in the 2019 policy delivered to the Weintraubs at the beginning of their policy term or available to them online. Weintraub v. Great N. Ins. Co., No. 21-cv-7965, 2022 WL 956272, at *8 (S.D.N.Y. Mar. 30, 2022).

Following this ruling, the parties jointly stipulated that there should be no further discovery, that the amount of damages in the event of liability would be $1,491,805, and that the only remaining issues were 1) Chubb's proof-of-loss defense, and 2) Chubb's defense that the Weintraubs failed to establish that their loss occurred in a period covered by the 2019 policy. See Joint Stipulation on Plaintiffs' Claimed Damages ("Joint Stipulation"), Dkt. 53. Both parties have now moved for summary judgment as to these two issues. For the reasons described below, the Court agrees with Chubb that the Weintraubs have failed to carry their burden to establish that their loss occurred during a period covered by the 2019 policy. While that ordinarily might not matter because the Weintraubs maintained continuous coverage in prior years, it is undisputed that the Weintraubs's 2018 policy

---

Opinion and Order. See Weintraub v. Great N. Ins. Co., No. 21-cv-7965, 2022 WL 956272, at *8 (S.D.N.Y. Mar. 30, 2022).

included the Y pages' requirement that they notify Chubb of their loss "as soon as possible," which the Weintraubs failed to do. Nor, the Court concludes, is there any evidence that Chubb waived the notice of loss requirement. As such, the Court denies the Weintraubs' motion for summary judgment, grants Chubb's motion for summary judgment, and directs the Clerk to enter final judgment dismissing the Complaint.[2]

## I. Legal Standard

"Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. "Genuine issues of fact are not created by conclusory allegations." Heublein, 996 F.2d at 1461.

---

[2] Because the Weintraubs have not adduced any evidence showing that their loss occurred in the period covered by the 2019 policy, and because they would not be entitled to coverage under an earlier policy due to their failure to provide prompt notice of their loss, the Court need not address Chubb's alternative remaining ground for declining coverage -- that the Weintraubs failed to submit a timely sworn proof of loss.

## II. Legal Analysis

### A. The Weintraubs failed to adduce evidence that their loss occurred during the 2019 coverage period.

Among other grounds, Chubb denied the Weintraubs coverage because they failed to establish that the loss of the claimed artworks, which were stored in a barn adjoining their country home, occurred during the policy period. See Joint Stipulation on Plaintiffs' Claimed Damages ("Joint Stipulation") ¶ 4, Dkt. 53. Here, the 2019 policy under which the Weintraubs claimed coverage applied from August 18, 2019 to August 18, 2020. Joint Stipulation at 1; Joint Pretrial Consent Order ("Consent Order") at 11, Dkt. 37. The Weintraubs discovered that their art was missing on August 25, 2019, i.e., one week after the 2019 policy's coverage began on August 18, 2019 -- meaning that the loss occurred at some time between that date and the prior date of October 2018, when Philip Weintraub was last in the barn where the art was stored and found nothing missing. See Weintraubs' Responses to Chubb's Rule 56.1 Statement ("Weintraubs' Responses"), Responses to Statement Nos. 9-10, at 4, Dkt. 69. There is no evidence as to when in that range the art was lost. Id.

Under New York law, an insured bears the burden of demonstrating that a loss occurred during the period covered by the relevant policy. Rangoli, Inc. v. Tower Ins. Co., 71 A.D.3d 753, 753-54 (App. Div. 2010) (awarding summary judgment to the insurer where the insured "failed to sustain its burden of proving that the loss occurred during the policy period"); Catucci v. Greenwich Ins. Co., 37 A.D.3d 513, 515

(App. Div. 2007) (same). As described above, there is no evidence whatsoever that the Weintraubs' loss occurred between the renewal of their insurance coverage on August 18, 2019 and when they discovered their loss on August 25, 2019, as opposed to any time between August 18, 2019 and when the Weintraubs last observed their art intact in October 2018.

Plaintiffs makes several arguments as to why the absence of any evidence that their loss occurred during a period covered by the 2019 policy should not matter. One of these -- that the Weintraubs maintained continuous coverage in prior years -- might ordinarily have saved their claim, except that, as explained below, the Weintraubs failed to comply with the acknowledged requirement of prior years' policies that they notify Chubb of their loss as soon as possible after becoming aware of it. See Part II.B, infra. In addition, the Weintraubs argue 1) that the contractual term defining the 2019 policy's term was not included in their physical or online versions of the 2019 policy and is therefore unenforceable; 2) that in the case of an "all-risk" insurance policy such as theirs, they were not required to show when their loss occurred; and, 3) that Chubb waived any defense that the Weintraubs' loss fell outside the policy period. Each of these arguments fail.

The first of these arguments -- that the coverage dates of the 2019 policy were not actually terms included in the 2019 policy because they were included in the "Y pages" not physically delivered to The Weintraubs or easily available to them online -- is wholly at odds

5

with facts the Weintraubs stipulated to in this case. Compare Pretrial Consent Order at 11 (stating, as a stipulated fact, that the relevant policy "was in place for the policy period August 18, 2019 to August 18, 2020" and that it "incepted on August 18, 2019."), with Weintraubs Mem. Supp. Mot. for Summary Judgment ("Weintraubs Mem.") at 15, Dkt. 62 (arguing that "[t]he Date of Policy Period Provision is Not Part of the 2019 Policy").

Setting aside this contradiction, the Weintraubs' argument would strip from their policy any coverage period limitation at all and would thereby theoretically allow them to submit claims for losses occurring at any past or future point. The Weintraubs cite no case construing a policy's coverage period to be unlimited in this way. Moreover, whether or not the term Chubb contends defined the policy period was actually included in the relevant 2019 policy delivered to the Weintraubs, nothing in the policy pages that were delivered suggests any intention by either party that coverage should extend to losses that predate the policy's inception. As such, there can be no genuine dispute that the policy's coverage did not extend to losses occurring before it was in place.

The Weintraubs' second argument -- that an "all-risk" policy such as theirs relieved them of any responsibility to show when their loss occurred -- fails for similar reasons. The Weintraubs' may be right that their "all-risk" policy relieved them of the responsibility to "prove or show the particulars of how a mysterious loss occurred." The Weintraubs Mem. at 16. But "[t]he plaintiff in a suit under an all-

6

risks insurance policy must [nonetheless] show a relevant loss in order to invoke the policy, and proof that the loss occurred within the policy period is part and parcel of that showing of a loss." Sovereign Recycling Int'l, Inc. v. New York Marine, Gen. Ins. Co., No. 97-cv-6324, 2001 WL 225243, at *8 (S.D.N.Y. Mar. 6, 2001).

The Weintraubs cite language from a case from this district stating that "[u]nlike a flood or a fire, the precise date of the happening of a mysterious disappearance is not easily ascertainable, if at all" and that "[g]iven that the Policy provides coverage for all risks, including mysterious disappearance, the phrase 'date of the happening of the accident' is reasonably susceptible to more than one meaning depending on the underlying risk to which it is being applied." Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 499 F. Supp. 2d 361, 379-80 (S.D.N.Y. 2007), rev'd in part on other grounds, 292 F. App'x 73 (2d Cir. 2008). But in Mitsui, it was undisputed that the loss occurred during a period in which the relevant policy was in place (between March 1, 2001 and September 13, 2004). Id. at 366-67 & n.9. The dispute in that case instead concerned whether a contractual one-year limitations period for suing on a claim began when a loss actually occurred, or when the insured knew or should have known of the loss, and the Court reasonably concluded that it would make little sense to construe such a one-year limitation period as running from the date of loss itself when the policy was meant to cover mysterious disappearances as to which an insured might not know the precise date of loss. Id. at 379-80. Here, by contrast, it makes eminent sense to

conclude that an insured seeking coverage under a policy must make some showing that the loss occurred during a period in which the relevant policy was in place, not before.[3]

Finally, this Court agrees that there is no factual dispute as to whether Chubb waived its policy period defense because "[w]here the issue is the existence or nonexistence of coverage . . . the doctrine of waiver is simply inapplicable." Charlestowne Floors, Inc. v. Fidelity and Guar. Ins. Underwriters, Inc., 16 A.D.3d 1026, 1027 (N.Y. App. Div. 2005) (quoting Albert Schiff Assocs., Inc. v. Flack, 417 N.E.2d 84, 87 (N.Y. 1980)). As described above, it was the Weintraubs's burden under New York law to demonstrate that a loss occurred in a period as to which the 2019 policy applied. As the Weintraubs failed to show that coverage existed in the first place, Chubb's putative waiver cannot retroactively create such coverage.[4]

**B. The Weintraubs' coverage from 2018 does not save their claim.**

The Weintraubs' best argument against summary judgment as to the policy period issue is that because they maintained continuous coverage with Chubb since the 1990s, Consent Order at 10, and because their loss occurred at some point between October 2018 and August 25, 2019,

---

[3] Indeed, the Weintraubs' position -- that a customer may claim losses under an all-risk policy for losses that predate that policy -- would incentivize customers to postpone obtaining insurance until after a loss occurs, thereby discouraging the issuance of such all-risk policies.

[4] In any event, for the reasons laid out in part II.B, infra, the Court would likely not conclude that Chubb waived a defense based on the policy period.

it does not matter whether their loss was covered by the 2019 policy or the prior year's policy because it was indisputably covered by one of them. Weintraubs Mem. 17. Chubb resists this continuous coverage argument on two grounds: first arguing that any lawsuit seeking to evince a claim under the prior year's policy would be untimely, and second, arguing that the Weintraubs failed to submit any notice of loss "as soon as possible" as required by the 2018 policy. The Court disagrees with the first of these arguments but agrees with the second.

As to timeliness, Chubb points out that the 2018 policy (which was in place from August 18, 2018 through August 17, 2019) contained language requiring the insured to bring suit "within two years after a loss occurs," and the Weintraubs' August 24, 2021 commencement of this action falls more than two years later than the expiration of the 2018 policy. See Morgan Guar. Trust Co. of New York v. Aetna Cas. and Sur. Co., 199 A.D.2d 72, 73 (App. Div. 1993) (holding that policy language requiring suit to be brought within a certain period following the "inception of the loss" referred to the date of the loss itself, rather than the date of an insured's discovery of the loss). However, as the Second Circuit noted in Fabozzi v. Lexington Ins. Co., 601 F.3d 88 (2d Cir. 2010), the "phrase 'after the inception of the loss' is regarded, in essence, as a term of art which fixes the limitations period to the date of the accident," while "[o]ther generic language . . . does not carry this same meaning [and] instead[] ties the limitations period to the moment when a claim accrues." Id. at 91. Chubb does not address the Second Circuit's reasoning in Fabozzi or

9

make any argument that the seemingly generic language in the Weintraubs' policy requiring suit to be brought within two years of a loss refers specifically to the date of the underlying loss, rather than the moment at which their claim accrued. As such, the Court believes a claim under the 2018 policy would likely not be barred by the policy's two-year limitation period for bringing suit.

However, it is undisputed that the 2018 policy contained the Y-Pages, including the requirement on page Y-5 that the insured "notify [Chubb] or [the insured's] agent of [the insured's] loss as soon as possible. Weintraub v. Great N. Ins. Co., 596 F. Supp. 3d 504, 508 (S.D.N.Y. 2022). The Court earlier concluded that because this requirement was not included in the version of the 2019 policy delivered to the Weintraubs or readily available to them online, it did not bind them as to losses occurring in the period covered by that policy. Id. at 513. But, as just noted, no party disputes that this requirement was included in the 2018 policy, and this Court has already held in resolving Chubb's motion to dismiss that the Weintraubs' 91-day delay between discovering his loss and notifying Chubb about it was "unreasonable as a matter of law." Weintraub v. Great N. Ins. Co., 571 F. Supp. 3d 250, 262 (S.D.N.Y. 2021).

Of course, this Court also held in resolving Chubb's motion to dismiss that the Weintraubs had plausibly alleged that Chubb waived this late notice defense by "propound[ing] numerous burdensome, costly, and embarrassing demands for information while continually telling [the Weintraubs] that Great Northern would adjudicate the

10

claim on its merits and in good faith." Id. at 266. Indeed, this issue of whether Chubb waived its late notice defense is one of the two questions as to which this Court conducted a limited-scope bench trial, although it declined to resolve the waiver issue after concluding that the "as soon as possible" language was not included in the 2019 policy. Weintraub, 596 F. Supp. 3d at 513. Since this issue is once again relevant because the Weintraubs seeks to excuse their failure to show their loss was covered by the 2019 policy's coverage period by instead relying on the 2018 policy, the Court addresses the waiver issue now and concludes that Chubb did not waive its late notice defense.[5]

In denying Chubb's motion to dismiss, this Court noted that "[t]here is ample authority that, in general, an insurer's letter expressly reserving its right to deny coverage for late notice of loss permits the insurer to later obtain dismissal of a coverage lawsuit on a late-notice defense." Weintraub, 571 F. Supp. 3d at 265; see also Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 274 (2d Cir. 1987) ("It is also obvious that we would do neither insurers nor insureds any favor by compelling the former to make uninformed decisions as to whether insureds have complied with conditions precedent. Insurers should therefore be allowed a

---

[5] Because the parties consented to trial over the issue of waiver of the late notice defense, this Court may weigh evidence and resolve it on the merits. See Consent Order. However, this Court also concludes that there would be no genuine issue of material fact as to whether Chubb waived its late notice defense, meaning Chubb would be entitled to summary judgment whether this Court addresses the issue as a factfinder or under the summary judgment standard.

reasonable period of time to investigate questions of coverage."). Since Chubb explicitly raised a late notice defense in a letter immediately following the Weintraubs's claim, such authority might have conclusively demonstrated that there was no waiver -- except that the Weintraubs's allegations "g[a]ve rise to the plausible inference that the insurer abandoned its late-notice defense by allegedly engaging in a twenty-month investigation of the claim's merits before denying coverage for untimely notice of loss." Weintraub, 571 F. Supp. 3d at 266. The Court found particularly notable the Weintraubs' allegation that Chubb had represented to them that their "claim would be resolved in good faith and on the merits." Compl. ¶ 20; Weintraub, 571 F. Supp. 3d at 253 (stating that while Chubb's reservation of rights letter would "[n]ormally . . . preserve the procedural defense [Chubb] now asserts," the Weintraubs alleged that Chubb instead "embarked on a twenty-month investigation of the claim's merits, allegedly propounding numerous costly, burdensome, and embarrassing demands on the Weintraubs for information, *while assuring the Weintraubs that their claim would be adjudicated on its merits*." (emphasis added)).

Contrary to the allegations in their complaint, however, the Weintraubs have not introduced any evidence that Chubb ever made any representation that their claim would be resolved "on the merits," rather than denied by reason of late notice. In fact, the jointly stipulated facts demonstrate that Chubb not only initially reserved rights on the late notice issue in its first communication with the

12

Weintraubs on November 25, 2019, but continued to reassert its reservation of rights in general terms in repeated communications between that first letter and July 2020, and thereafter in terms that specifically mentioned the late notice issue. Consent Order at 12-15.

Moreover, some significant part of the delay between the Weintraubs' November 2019 claim and Chubb's ultimate denial of coverage on July 16, 2021 owed to the Weintraubs' conduct and events such as the COVID-19 pandemic that were not attributable to either party, rather than Chubb's investigation. For instance, Chubb initially requested the Weintraubs to submit to an examination under oath ("EUO") on February 6, 2020. Consent Order at 13. However, the Weintraubs requested that the EUO be delayed until March 26, 2020. Id. at 13-14. In early March 2020, the COVID-19 pandemic was declared an emergency in New York, leading to still further delays. Id. at 14. Then, after Chubb requested the Weintraubs submit to an EUO in June or July 2020, Philip Weintraub reported a serious head injury that required further delay. Id. at 15-16. The date the Weintraubs ultimately offered for an EUO, after further follow-up from Chubb, was not until December 10, 2020. Id. at 17. As such, the undisputed facts demonstrate that about one year of Chubb's delay was caused by the Weintraubs' requests or the COVID-19 pandemic.

The Weintraubs argue that their delay in submitting to an EUO should not matter because Chubb knew about their failure to submit timely notice as soon as they submitted their claim in November 2019 and therefore should have had no need to conduct an EUO -- or, at the

very least, could have conducted a limited EUO early in the investigation dealing solely with the issue of timely notice. But as the lawyer charged with investigating the Weintraubs's claim testified at trial, it would not have been standard practice for Chubb to deny coverage as soon as it made an initial determination that the Weintraubs's claim was untimely, because, among other things, the insured might be able to give some reason for a delay that might entitle him to coverage notwithstanding late notice. 1/31/22 Hr'g Tr. 155:9-15, 156:2-12, 156:21-157:9 (Rubin). While Chubb perhaps could have made efforts to conduct an EUO earlier than it did had it agreed to restrict the subject of the EUO solely to the late notice issue, the Weintraubs cite no authority suggesting that Chubb was required to conduct this kind of piecemeal investigation that might have required a further EUO later in time should Chubb have determined that the Weintraubs' late notice was excused but other grounds existed for denying coverage.

As such, the Weintraubs have failed to offer evidence supporting waiver of the sort this Court contemplated in denying Chubb's motion to dismiss. Importantly, they have not introduced any evidence showing that Chubb represented to them that it would adjudicate their claim on the merits. Moreover, much of the 20-month delay this Court assumed at the pleading stage was entirely attributable to Chubb was in fact attributable to the Weintraubs or to events, such as the COVID-19 pandemic, that were plainly not Chubb's fault. As discussed in this Court's Opinion and Order denying the Weintraubs's motion to dismiss,

there may be situations where -- notwithstanding an express reservation of rights letter along the sort Chubb sent here -- an insurer subsequently waives an explicitly raised defense, whether by explicitly or implicitly leading the insured to believe it would adjudicate the claim on the merits or by putting the insured to extreme expense and delay in investigating other issues. Weintraub, 571 F. Supp. 3d at 265. But that is plainly not the situation here. As such, the Court concludes that the Weintraubs have failed to establish or raise any issue of material fact as to whether Chubb waived its late notice defense.

### III. Conclusion

For the foregoing reasons, the Court grants Chubb's motion for summary judgment and denies Weintraub's. The Clerk is directed to close the parties' respective summary judgment motions (entries 55 and 56 on the docket) and enter final judgment in favor of defendant Chubb.

SO ORDERED.

New York, NY
December 27, 2022

_____
JED S. RAKOFF, U.S.D.J.

15